**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin Thomas FORD,
Defendant–Appellant.**

No. 88–3603.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 3, 1989.

Decided April 10, 1989.

---

David Shroyer, James E. Rattan (argued), Asst. U.S. Attys., Robyn Jones, Columbus, Ohio, for plaintiff-appellee.

Gordon Hobson (argued), Columbus, Ohio, for defendant-appellant.

Before KENNEDY and NELSON, Circuit Judges; and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

Ford appeals his jury convictions on charges of using false identification and making a false statement in connection with the purchase of a firearm (Count I), of providing false identification in a transaction that affected interstate commerce (Count II), and of possessing a firearm after having been convicted of a felony and of having three previous violent felony convictions (Count III). Because we hold that the evidence introduced at trial and the district judge's instruction constructively amended the charge contained in Count III of the grand jury's indictment, we reverse Ford's conviction on Count III, but we affirm the other convictions.

### Statement of the Case

On November 2, 1986, a man identifying himself as "Andre J. Small" purchased a revolver from the Powder Room, a gun shop in Powell, Ohio. "Small" used an Ohio driver's license in that name for identification and signed a statement denying that he had a felony conviction in a firearms registration form.

On August 9, 1987, while driving near Columbus, Ohio, Ford shot himself in the hand. A friend of Ford, Nathaniel Edwards, who had been driving in tandem with Ford, noticed that Ford had pulled into a parking lot and parked. Edwards followed Ford into the lot and witnessed Ford's hand bleeding. Ford then gave Ed-

wards the gun with which he had shot himself, and the two proceeded to a nearby police station where Ford told the police that he had been shot by another motorist. After arriving at the police station, Ford was taken to a hospital while his car remained at the station. It was decided by the investigating officers that the vehicle would be impounded. Pursuant to police procedure the vehicle was subjected to an inventory search before impoundment. During the course of the search an Ohio driver's license bearing Ford's picture but in the name of "Andre J. Small" and a checkbook in the name of "Andre J. Small" were found in a pocket of Ford's jacket which was hanging behind the driver's seat. Edwards took the gun and returned it to Ford's wife several days after this incident.

On September 28, 1987, Ford's wife, Cathy, reported to the Columbus police that Ford had a gun and was threatening to kill her. When the police arrived, they arrested and searched Ford but did not find a gun on his person. A gun was found, however, in the upstairs bathroom. It was apparently the same gun that had been purchased on November 2, 1986 in Powell, Ohio.

Ford, prior to November 2, 1986, had been convicted of six felonies, five of which were violent felonies.

The grand jury indictment charged Ford with, on November 2, 1986, making a false statement denying any prior felony convictions, alleging that Ford had two violent and one nonviolent criminal convictions, and with using false identification in connection with the purchase of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1) (Count I); with producing a false Ohio driver's license on November 2, 1986 in a transaction affecting commerce in violation of 18 U.S.C. § 1028(a)(1) and (c)(3) (Count II); and with possessing a firearm "[o]n or about September 28, 1987" after having previously been convicted of a felo-

ny[1] and, to support additional punishment under § 924(e)(1), of having at least three previous violent felony convictions,[2] in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1) and (e)(1) (Count III).

Prior to trial, Ford made a motion *in limine* to prevent the introduction of evidence of more than one prior felony conviction. His contention was that the three violent crimes required to be proved under § 924(e)(1) were not ingredients of the crime charged and would only be a basis for augmenting the penalty and that, therefore, proof of them was not admissible until after conviction to augment the penalty. Ford further contended that the prosecution should be limited at trial to proving only one of the felonies that was alleged in both Count I and Count III. The motion was denied and, as stated, at trial the government introduced evidence of six felony convictions, five of which were violent. Ford again objected to this evidence at trial and was overruled.

Since Count III of the indictment charged possession "[o]n or about September 28, 1987," the district judge instructed the jury in the general charge that it was sufficient for purposes of a conviction on that count to find that Ford had possessed a gun on a date reasonably near September 28, 1987. During deliberations, the jury asked the judge a question which counsel agreed was intended to ascertain whether they could find Ford guilty on Count III if they believed that he had possessed a gun on August 9, 1987. The judge then further instructed the jury that the critical factor was a finding of possession after Ford had been convicted of a felony, and charged that, in substance, the time frame could include any date from November 1986 (the alleged purchase date) through September 1987 (the alleged possession and domestic violence date).

The jury returned convictions on all three counts and Ford was sentenced to 20 years

---

1. 18 U.S.C. § 922(g)(1) actually requires, as a predicate crime, a crime "punishable by imprisonment for a term exceeding one year." For brevity, herein we refer to such crime as a "felony".

2. Count III charged "at least three" such convictions and then specifically described five such convictions.

without parole on Count III and to concurrent five-year sentences on Counts I and II. Ford appeals his convictions on all three counts contending (1) as to the possession charge in Count III, that the district judge's instruction with respect to the dates of possession of a firearm improperly diverged from the date alleged in the indictment and therefore constituted reversible error, (2) as to all counts, that the introduction of evidence of six prior felony convictions constituted prejudicial and reversible error, and (3) as to all counts, that the search of Ford's jacket during the legitimate inventory search of his automobile was impermissibly broad in scope and that it was, therefore, error to admit the evidence so obtained.

### Amendment of the Indictment

Ford argues that the district judge's supplemental jury instruction improperly amended the charge contained in Count III of the indictment and that this modification warrants reversal of his conviction on that count. In Count III of the indictment the grand jury charged:

> On or about September 28, 1987, in the Southern District of Ohio, KEVIN THOMAS FORD, did unlawfully possess affecting commerce a firearm, that is a Smith and Wesson, Model 60, .38 special caliber revolver, having been convicted of a crime punishable by imprisonment for a term exceeding one year and having at least three previous convictions which constitute violent felonies....

Count III then charged five specific convictions of violent crimes.

The district judge's general instructions to the jury included a standard instruction as to the jury's proper consideration of the "on or about" language contained in the indictment:

> [I]t is not necessary that the government prove beyond a reasonable doubt that the acts alleged were committed on the exact date named in the indictment. It is sufficient if you find beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

The jury deliberated the remainder of that day and on the morning of the next day informed the judge that it could not reach a unanimous verdict. The judge then gave the jury a modified *Allen* charge.[3] The jury resumed its deliberations and shortly thereafter advised the judge that it wanted further instruction as to what constituted a date reasonably near the date charged in the indictment. Counsel agreed, as heretofore stated, that the gist of the jury's request was for an instruction as to whether the conviction on Count III could be based on possession on August 9, 1987. The judge then gave the following supplemental jury instruction:

> Now, in this case, under the evidence there is a time span, a considerable time span that the evidence encompasses. That time span would begin with the date alleged in Count One of the indictment, which is on November 2nd, 1986, on which date it is charged that Kevin Thomas Ford purchased this firearm. And that time frame then begins on November 2nd, 1986, and extends all the way up to the date specified in Count Three of the indictment; namely, September 28th, 1987, which of course, is the date of the alleged domestic violence, and that would include the dates in between. And, of course, there is one particular date which has been the subject of some evidence in this case; namely, the date of an incident in which Mr. Ford was injured somehow while on the highway, Interstate 270.
>
> In this case, what is significant would be a finding beyond a reasonable doubt that Kevin Thomas Ford possessed a firearm, affecting commerce, after he had been convicted of a felony. And in this case, the time frame could include any date from November 2nd, 1986, the date he allegedly purchased the firearm, up until the date of September 28th, 1987, the date of the alleged domestic violence in his home.

Thirty-five minutes after this instruction was given, the jury returned a verdict of guilty on all three counts.

---

**3.** *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

The Supreme Court has recognized the damaging effect of modifications to the charges issued by a grand jury. In *Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887), the Court declared:

> If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

Later, the Court in *Stirone v. United States*, 361 U.S. 212, 215–16, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960), utilized the above-cited language of *Bain* as support for its ruling that the constitutional rights of an accused are violated when a modification at trial acts to broaden the charge contained in an indictment. Such a modification, the *Stirone* Court held, contradicts the very purpose of the fifth amendment grand jury requirement, that is, "to limit [the accused's] jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone*, 361 U.S. at 218, 80 S.Ct. at 273 (footnote omitted).

It is widely recognized that modifications of the charges contained in a grand jury indictment exist in two forms: amendments and variances.

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Gaither v. United States*, 413 F.2d 1061, 1071 (D.C.Cir.1969) (footnotes omitted). *See also United States v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978) (adopting the *Gaither* court's definitions of amendment and variance), *cert. denied*, 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981). An amendment is considered per se prejudicial and warrants reversal of a conviction, whereas a variance is not reversible error unless the accused has proved a prejudicial effect upon his defense. *United States v. Hathaway*, 798 F.2d 902, 910–11 (6th Cir. 1986); *Beeler*, 587 F.2d at 342; C. Wright, Federal Practice and Procedure § 127 (1982).

An amendment is considered per se prejudicial because it effects a direct infringement upon the fifth amendment guarantee that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." When the charging terms of an indictment are effectively altered, the accused is held answerable for a charge not levied through the protective device of a grand jury. A variance, however, does not undercut the charging terms of an indictment but merely permits the proof of facts to establish the criminal charge materially different from the facts contained in the indictment. In this manner a variance does not violate the fifth amendment grand jury guarantee but instead infringes upon the "appraisal function" of the sixth amendment which requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...." J. Moore, Moore's Federal Practice ¶ 7.05[1] (1988).

Blurring the distinction between amendments and variances is the concept of the constructive amendment which is a variance that is accorded the per se prejudicial treatment of an amendment. The Supreme Court in *Stirone* dealt with such a modification of the indictment. In that case, the indictment charged Stirone with obstructing the interstate importation of sand from outside Pennsylvania to a concrete supplier within the state. The evidence offered by the prosecution and the district court's instructions, however, permitted the jury to find that Stirone had interfered with the interstate exportation of steel from a Penn-

sylvania plant later to be constructed with the Pennsylvania supplier's concrete. The Court held that although there was not an alteration of the actual terms of the indictment, since the district court permitted the consideration of facts materially different from those contained in the indictment to prove the interstate commerce component of the crime and charged the jury that such facts, if found, could establish the interstate component of the crime, this variance was so great as to amount to per se prejudicial error.[4]

> While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error.

*Stirone,* 361 U.S. at 217, 80 S.Ct. at 273.

■ Applying these definitions to the situation before us, it is readily apparent that a literal amendment of the indictment did not occur as the actual terms in Count III were unaltered. It is equally apparent that a variance amounting to a constructive amendment had occurred as the prosecution offered evidence at trial to prove that Ford possessed a firearm on November 2, 1986 and August 9, 1987 in addition to the September 28, 1987 date stated in the indictment, and the court instructed the jury that a finding of possession from November 1986 to September 1987 satisfied the indictment. This circuit has held that a variance rises to the level of a constructive amendment when "the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Hathaway,* 798 F.2d at 910. Here, the offense charged was *possession* "[o]n or about September

28, 1987" by a convicted felon. We hold that the essential element of possession was so modified at Ford's trial as to amount to a constructive amendment of Count III of the indictment.

When "on or about" language is used in an indictment, proof of the exact date of an offense is not required as long as a date reasonably near that named in the indictment is established. *United States v. Nersesian,* 824 F.2d 1294, 1323 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). The supplemental instruction given by the district judge during the jury's deliberations nevertheless fails this test for two reasons. First, the district judge instructed the jury that it could find possession on any date over a period of approximately eleven months. It is clear to us that the November 1986 date is not a date that is reasonably near September 28, 1987. Second, we believe the "reasonably near" rule approved by such cases as *Nersesian* contemplates a single act the exact date of which is not precisely known by the grand jury and, therefore, does not need to be proved with exactitude. Here, the November 1986 (purchase), August 1987 (incident on highway), and September 1987 (domestic violence) events involved substantially separate incidents of alleged possession. Absent language indicating the grand jury's intent to permit a conviction based on more than one incident of criminal conduct, a court cannot assume that a grand jury would have included in its indictment an additional incident of criminal conduct. *See Bain,* 121 U.S. at 10, 7 S.Ct. at 786. It is therefore possible that the jury convicted Ford based on an incident of possession not intended by the grand jury to be part of the charge. This frustrates the fifth amendment grand jury indictment guarantee. It is also possible that some jurors may have found that Ford possessed a firearm on September 28, 1987, while others may have found possession on August 9, 1987, and others on still another date all within the time period stated in the

---

**4.** This so-called "constructive amendment" of the indictment appears to be the same as that referred to in *Gaither* as being "in effect" an

amendment although not "literally" an amendment. As stated, this court in *Beeler* approved and adopted the doctrine from *Gaither.*

district judge's instruction. It is therefore uncertain whether the guilty verdict returned on Count III was unanimous as is required by Federal Rule of Criminal Procedure 31(a).[5]

We therefore hold that the modification of the possession charge in Count III at trial by the court constituted a constructive amendment of the indictment. This constructive amendment was prejudicial per se and warrants reversal of Ford's conviction on Count III.

### Effect of Proof of Six Prior Felonies on Convictions Under Counts I and II

As stated, under Count I, Ford was charged, in connection with the purchase of a firearm, with making a false statement in that he denied having been convicted of a felony. 18 U.S.C. § 922(a)(6). In that count it was alleged and was proved at trial that Ford had been convicted of three felonies: holding a correctional officer hostage, assault and battery, and receiving stolen property. As has also been stated, in Count III it was charged that Ford possessed a firearm, having been convicted of a felony and having been previously convicted of at least three violent felonies. 18 U.S.C. §§ 922(g)(1) and 924(a)(1) and (e)(1). It was further charged in Count III and proved at trial that Ford had been convicted, in addition to the two violent felonies also alleged in Count I, of three additional violent felonies. Ford's trial position was that the prosecution should be allowed to prove only one felony to support the conviction under both Count I and Count III and that the requirement of proof of three violent felonies under Count III was only to enhance the sentence and was not an element of the crime.[6]

At the time of this trial, this court had recently decided *United States v. Brewer*, 841 F.2d 667 (6th Cir.1988) (*Brewer I*), which involved a conviction under 18 U.S.C. App. § 1202, part of an earlier version of this Armed Career Criminal Act. In *Brewer I*, the indictment had not charged three previous violent crimes and the government had proved such crimes after conviction to enhance the sentence. On appeal, it was contended by the defendant that such violent crimes were predicate crimes to conviction and that therefore they must be charged in the indictment and proved at trial. This court agreed and in *Brewer I* reversed the conviction. The district judge in the instant case applied the holding in *Brewer I* and treated the requirement of conviction of three violent crimes as being an element of the crime to be proved at trial. On rehearing, however, this court in *Brewer II, United States v. Brewer*, 853 F.2d 1319 (6th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988), determined that the three prior violent crimes were not predicate crimes to conviction and were only a basis for enhancement of punishment after conviction. This court, therefore, in *Brewer II*, affirmed the conviction.

In reaching its interpretation of the statute in *Brewer II*, this court said:

---

**5.** In his appellate brief, Ford asserts that it was not conclusively proved at trial that the gun involved in the August 9, 1987 incident was the same gun as that purchased from the Powder Room on November 2, 1986 or discovered in Ford's home on September 28, 1987. If this is so, there is an additional complication since the interstate commerce aspect of this firearm was not proved at trial. We need not address this issue, however, since reversal of Ford's conviction on Count III is warranted on other grounds.

**6.** 18 U.S.C. § 922(g)(1) provides:
   It shall be unlawful for any person—
   (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   . . .

to ... possess in or affecting commerce, any firearm. . . .
18 U.S.C. § 924(e)(1) provides:
   In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

This court is also concerned that the interpretation of the ACCA [Armed Career Criminal Act] urged by appellants and the dissent would "require the government to place evidence of a defendant's three prior felony convictions before the jury in any proceeding under the ACCA. The inherently prejudicial nature of this kind of evidence is well-known." [*U.S. v.*] *Jackson*, 824 F.2d [21] at 25. [D.C.Cir.1987] "[A]bsent any convincing evidence, in either the text, structure, or legislative history of the ACCA, that Congress intended to deviate from this general policy," this court should not require that highly prejudicial proof of prior convictions be required at trial. *Id.* 853 F.2d at 1324–25.

Ford argues, based on this language in *Brewer II,* that it was reversible error vis-à-vis Count III to admit into evidence the proof of the five violent crimes and that this error also vitiates the convictions under Count I and Count II. *Brewer II,* however, does not so hold; it simply points to the possible prejudicial effect of this proof of violent felonies as a reason for construing the statute to provide that such proof should only be allowed for enhancement of the penalty for the crime after conviction.

Before considering the cases dealing with the propriety of proving more than one predicate felony where one can satisfy the statute, we note that both Count I and Count III required the proof of a predicate felony. And while Ford contends that the government should have been confined to proof of only one such felony, we do not understand him to contend that the government should have been required to select the one nonviolent felony—receiving stolen property.

This circuit has held that the government is not limited to proving only one prior felony conviction under the former 18 U.S. C.App. § 1202(a)(1), which prohibited the possession of a firearm by a person who had one previous felony conviction. *United States v. Burkhart,* 545 F.2d 14, 15 (6th Cir.1976); *United States v. Fields,* 500 F.2d 69 (6th Cir.), *cert. denied,* 419 U.S.

1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974). *See also United States v. Adkins,* 464 F.Supp. 419, 420 (E.D.Tenn.1978) ("The indictment herein may properly charge more than one prior felony conviction, and the government is not limited to establishing only one such conviction."). *Accord United States v. Timpani,* 665 F.2d 1, 6 (1st Cir.1981). Moreover, in the Fifth Circuit case of *United States v. Rusk,* 512 F.2d 815, 817 (5th Cir.), *cert. denied,* 423 U.S. 1020, 96 S.Ct. 458, 46 L.Ed.2d 392 (1975), five prior felony convictions were introduced to prove that the defendant had falsely stated in an application form that he had never been convicted of a crime punishable by imprisonment for a term exceeding one year.

■ It appears to us that the proof of six prior felony convictions did not constitute reversible error so far as Count I is concerned. The government was, under the authorities cited, entitled to prove more than one prior violent felony conviction as predicate crimes for conviction under Count I and Count III. While not intending to indicate that the government's motive is relevant here, it must be remembered that, at the time of this trial, under *Brewer I,* the government was *required* to prove three prior violent criminal convictions under Count III. Certainly, since the government was entitled to prove more than one violent felony conviction as a predicate to conviction under Count I, it would be speculation to conclude that proof of five such convictions was likely to make a difference to the jury.

Accordingly, we hold that the proof of the prior felony convictions does not constitute reversible error with respect to Count I.

■ With respect to Count II, while Ford moved to sever Count III from Counts I and II, there was no motion to sever Count II from Count I. Further, there is no appeal from the denial of the severance motion that was made. Thus it cannot here be argued that the district court, in not severing Count II from the counts that allowed proof of predicate crimes, committed reversible error.

The district court specifically charged the jury: "[Y]ou may not consider evidence of Defendant's prior convictions in any way in determining Defendant's guilt or innocence as to Count 2 of the indictment. . . . You may not consider evidence of Defendant's prior convictions as evidence of a general propensity on the part of the Defendant to commit crime."

In *Murray v. Superintendent, Ky. State Penitentiary*, 651 F.2d 451, 453 (6th Cir. 1981), a habeas case, the petitioner had been convicted, in connection with a charge of armed robbery, of being an habitual offender. At the time of the prosecution, under Kentucky law, the two prior felonies necessary to conviction were predicate offenses to be charged and to be proved at the trial for armed robbery. The Kentucky trial judge had charged the jury that it was not to consider the prior felony convictions as evidence that petitioner had committed the armed robbery. In the habeas case, it was contended that petitioner had been denied federal due process by allowing the proof of the predicate offenses at his armed robbery trial. This court reversed the district court's grant of habeas relief. In reaching this result, this court relied principally on *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). Judge Keith, writing for this court, said:

> A key holding of *Spencer* was that a defendant's rights are deemed protected by limiting instructions. A jury is presumed to heed an instruction directing it not to consider a defendant's prior criminal record as evidence in guilt. *See Spencer supra*, 385 U.S. at 561–62, 87 S.Ct. at 652. The logical converse of this argument is that it is unfair—and violative of due process—if evidence of other crimes is admitted without a limiting instruction. This court so held in *Evans v. Cowan*, 506 F.2d 1248 (6th Cir.1974), *Dawson v. Cowan*, 531 F.2d 1374 (6th Cir.1976), and *Turnbill v. Bordenkircher*, 634 F.2d 336 (6th Cir.1980).

*Murray*, 651 F.2d at 453. *See also Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvert-ently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, *Richardson v. Marsh*, 481 US [200, 208], 95 L Ed 2d 176, 107 S Ct 1702 [1708] (1987), and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant, *Bruton v. United States*, 391 US 123, 136, 20 L Ed 2d 476, 88 S Ct 1620 [, 1628] (1968)."); *Spencer*, 385 U.S. at 562, 87 S.Ct. at 653 ("the jury is expected to follow instructions in limiting this evidence to its proper function," i.e., evidence of a prior conviction to enhance the sentence). In *Murray*, this court went on to hold that a limiting instruction given in the general charge was sufficient and that it was not required that it be given at the time the evidence of prior conviction is introduced.

We recognize, as was expressly recognized in *Murray*, that this court was there applying constitutional law and was not exercising supervisory powers with respect to a trial in federal district court. Nevertheless, we are not prepared, exercising only supervisory powers, to reverse the conviction on Count II under these circumstances.

In this connection, we point out that, under Rule 609 of the Federal Rules of Evidence, if a defendant testifies, he may be impeached under appropriate circumstances by proof of prior felony convictions. In that situation, we must rely on a charge to the jury that such proof may be considered only as impeaching the credibility of the defendant as a witness and not as substantive evidence that he committed the crime for which he is being tried. We point this out only as another context in which, in a criminal trial, we rely on a charge to the jury to consider proof of prior convictions solely for a limited purpose.

Accordingly, we conclude that the introduction of the evidence of the prior felonies in this case under these circumstances did not create reversible error with respect to the conviction under Count II.

### The Inventory Search

■ On August 9, 1987, pursuant to a legitimate inventory search and to local

police procedure, the investigating police officers discovered a false driver's license and a false checkbook in the pocket of a jacket hanging in the back seat of Ford's car. Ford does not dispute the legitimacy of the inventory search. Instead, he contends that the search into the pockets of the jacket exceeded the proper scope of the inventory search.

An inventory search of an automobile impounded pursuant to police procedures for the purpose of safeguarding the valuables in the vehicle is proper under *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Bertine*, police found canisters containing drugs inside a backpack found behind the driver's seat of a van subjected to an inventory search. The Court held that the search of the van and the backpack did not violate the fourth amendment. *Bertine*, 479 U.S. at 374, 376, 107 S.Ct. at 742, 743. Similarly, the search of Ford's jacket hanging in the back seat of the vehicle was not unreasonable and was not outside the permissible scope of an inventory search. The search of the jacket was pursuant to local police procedures and was necessary to safeguard any valuables contained in its pockets and to safeguard the jacket itself as well as to guard against claims of theft, vandalism, or negligence on the part of the police. *Bertine*, 479 U.S. at 373, 107 S.Ct. at 742. It was therefore within the reasonable scope of the inventory search and the evidence obtained therefrom was admissible at Ford's trial.

For the foregoing reasons, we AFFIRM the convictions of Ford on Count I and Count II, but we REVERSE Ford's conviction on Count III.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur that there was a modification of Count III of the indictment which requires retrial. Because I believe that the evidence of five prior violent felonies was extremely prejudicial, I would also require a new trial on Counts I and II as well.

As pointed out by the majority, this Circuit has twice held that the indictment may charge more than one felony conviction and the government is not limited to establishing only a single conviction. In both of those cases there were only two prior convictions, not six as there are here. No interest of the government is served by the evidence of so many additional convictions. Prejudice to the defendant is clear, especially where five are of a violent nature. Convictions of that magnitude might well cause a jury to "feel that incarceration is justified because the accused is a 'bad man' without regard to his guilt of the crime currently charged." *Spencer v. Texas*, 385 U.S. 554, 575, 87 S.Ct. 648, 659, 17 L.Ed.2d 606 (1967) (Warren, C.J., dissenting).

We recognized the prejudice in requiring evidence of three violent felonies in *Brewer II*. Had not the District Court believed that the government was required to prove three violent felonies to establish the elements of Count III, there is little likelihood that it would have admitted evidence of all six convictions. Under our supervisory responsibility I would find it an abuse of discretion to admit evidence of the six convictions to establish that the defendant was a convicted felon.