UNITED STATES of America,
Plaintiff,

v.

Robert Frederick JOHNSTON,
Jr., Defendant.

No. CRIM.02–12.

United States District Court,
S.D. Iowa.

Oct. 25, 2002.

Alfredo G. Parrish, Parrish, Krruidenier, Moss, Dunn & Montgomery LLP, Des Moines, IA, for Defendant.

Debra L. Scorpiniti, U.S. Atty., Andrew H. Kahl, Asst. U.S. Atty., Des Moines, IA, for U.S.

## ORDER ON MOTION FOR NEW TRIAL

PRATT, District Judge.

On September 25, 2002, Defendant Johnston was convicted by a jury of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. sections 841(a)(1) and 846. The jury declined to find that the Government had proved beyond a reasonable doubt that Defendant reasonably foresaw that the amount of methamphetamine involved in the conspiracy was 50 grams or more of a mixture or substance containing methamphetamine. Accordingly, Defendant is subject to penalties pursuant to 21 U.S.C. section 841(b)(1)(C), *i.e.,* up to twenty years imprisonment, a fine of $1,000,000, both a term of imprisonment and a fine, and a term of supervised release of at least three years. On October 1, 2002, Defendant filed a motion for new trial (Clerk's No. 38), wherein he asserts that a new trial is in order due to prosecutorial misconduct in eliciting testimony which created an amendment and/or a material variance to the Indictment in violation of the Fifth and Sixth Amendments. The Government resists Defendant's motion and the matter is fully submitted.

### I. FACTS

On January 24, 2002, a Federal Grand Jury returned a one-count Indictment charging the Defendant with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § § 841(a)(1), (b)(1)(A), and 846. Specifically, the Indictment alleged that Defendant committed the charged crime in or about Ottumwa, Iowa from "on or about April 1, 2001, and continuing to on or about October 26, 2001." The defense asserted that Defendant was a mere user of methamphetamine and was not part of a conspiracy to distribute the drug. *See* Trial Tr. (Defense Opening Statement).

During its case in chief, the Government called Charles Jackson to testify regarding the Defendant's involvement in the alleged conspiracy. Very early in the direct examination of Mr. Jackson, the following colloquy took place without objection by defense counsel:

Q. How long have you known Howdy? [1]

A. Since about '95.

Q. Have you ever known Howdy to be involved in methamphetamine?

A. Yes.

Q. And when did you first become aware of that?

A. Probably '95.

Q. Did there come a time that you obtained methamphetamine from Howdy?

A. Yes.

Q. When did you obtain methamphetamine from Howdy?

A. In 2001.

Q. About when did that occur first?

A. Probably the summer.

Partial Trial Tr. (Testimony of Charles Jackson) at 8. Jackson went on to testify that, once a week for about a month in the summer of 2001, he bought one-eighth ounce quantities of methamphetamine from the Defendant. *See id.* at 9. Jackson also testified that the Defendant "was left in charge" of the drug selling business while another alleged conspiracy member was on vacation. *See id.* at 11–12. Cross-examination of Jackson by defense counsel revealed that when Jackson began cooper-

---

1. It was established during trial that "Howdy" was a commonly used nickname for the Defendant, Robert Frederick Johnston, Jr.

ating with law enforcement in Autumn 2001, he did not initially mention having purchased methamphetamine from the Defendant. On redirect examination, the Government elicited testimony from Jackson which indicated that, at the time law enforcement began questioning Jackson, he was buying methamphetamine from another alleged conspirator, Lori Arnold. Jackson testified that law enforcement was focused on Lori Arnold as a target of the investigation and never specifically asked him questions about the Defendant. Jackson testified that he never gave a "full blown debriefing" to law enforcement during Autumn 2001 and did not voluntarily elaborate on the information he provided to law enforcement during that time period. Later, during further attempts by the prosecution to show why Jackson never mentioned the Defendant during his contact with law enforcement in Autumn 2001, the following colloquy took place:

> Q: In September and October of 2001 when you talked to law enforcement to talk with them about a series of controlled buys you might be able to do, did you tell them any lies?
>
> A: No, I told them what they wanted to know.
>
> Q. Okay. Based upon questions they were asking you specifically?
>
> A. Yes.
>
> Q. And those questions were along the lines of who could you buy from; is that correct?
>
> A. Yes.
>
> Q. And along the lines of who had you bought from?
>
> MR. PARRISH: Objection, repetitive.
>
> THE COURT: Overruled.
>
> Q. And along the lines of who you bought from?
>
> A. Yes.

> Q. And, again, in September and October of 2001, you had not been buying from Howdy for some time?
>
> MR. PARRISH: Objection; beyond the scope of recross-examination.
>
> THE COURT: Overruled.
>
> A. Excuse me.
>
> THE COURT: Do you remember the question?
>
> A. No.
>
> THE COURT: "And again in October and September of 2001, you had not been buying from Howdy for some time?"
>
> MR. PARRISH: Objection. That's— Your Honor, I am going to object to it. And make a motion for mistrial. I am going to also-
>
> THE COURT: We can do that at the break. Why don't you do that outside the presence of the jury. Do you know the question, Mr. Jackson?
>
> MR. PARRISH: Objection of relevance. Objection; 403. Objection; beyond the scope of the recross-examination. Objection; new evidence beyond the scope of the indictment.
>
> THE COURT: Overruled. You can answer.
>
> A. No, I haven't. I wasn't at that time.

*Id.* at 33–34.

No further testimony was obtained from Mr. Jackson and the jury was recessed. Defense counsel argued in favor of a mistrial, claiming that the government intentionally elicited testimony from Mr. Jackson that Defendant had been involved in methamphetamine since 1995, a time outside the scope of the Indictment. Defense counsel alternatively argued that the government was negligent in eliciting the response. Further, the defense argued:

> [Ms. Scorpiniti] asked several times, at least on two occasions that I can recall,

about dealings with Mr. Jackson. Of course, with no record to protect me being made prior to that time, I was at a disadvantage. Consequently, when the question was asked, "When did you deal with Mr. Jackson?", the response was, "Well, not at that time." Clearly meaning that, well, some other transactions took place with him in 1995 or before the indictment. My argument then would be that evidence has come into the record that the defendant was not notified of prior to trial that expands the period of time he has to defend against .... Second of all, under 403, the evidence that has now come out with regard to 1995 and the question answered and pointed to, "Well, not at that time," under 403 is so prejudicial that the jury cannot be explained or be given a cautionary instruction by this Court to have them forget about that evidence.

*Id.* at 37.

The Government resisted the defense motion for mistrial, arguing that it had no prior information that Mr. Jackson would provide any information regarding Defendant's involvement with methamphetamine prior to the time of the Indictment. Discussing the record as a whole, the Government asserted that the jury could not reasonably have been misled by Jackson's small reference to 1995. Upon consideration, the Court declined to grant a mistrial, but later gave the jury a cautionary instruction upon the request of defense counsel. The cautionary instruction stated:

> Evidence has been introduced by a Government witness that purports to suggest that Mr. Johnston was involved in drug activity not covered during the period of this indictment. The evidence should not have been injected into this trial. You are to disregard the testimony. You cannot use that testimony in

your deliberations in any manner. The Court, by this ruling, strikes the testimony and prohibits the prosecution from any further reference to that testimony in this proceeding.

Trial Tr. at 368.

Defendant's Motion for New Trial reasserts the arguments made during the motion for mistrial. Additionally, Defendant argues that the Court inadvertently emphasized the evidence relating to drug activity in 1995 when it read the question, "And again in October and September of 2001, you had not been buying from Howdy for some time?" back to Mr. Jackson after overruling a defense objection to the question. Partial Trial Tr. at 34. The Government counters that Jackson's reference to 1995 was a completely unexpected response that did not prejudice the trial in any way. According to the Government, later discussion of methamphetamine deals at "earlier times" can only be reasonably construed to refer to a one month period in summer 2001, because that is the only time period in which Jackson testified he purchased methamphetamine from the Defendant.

## II. ANALYSIS

 Federal Rule of Criminal Procedure 33 provides: "On a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." The trial court has wide discretion in deciding whether to grant a new trial, however, such authority should be exercised sparingly. *See United States v. Huerta–Orozco,* 272 F.3d 561, 566 (8th Cir. 2001) (citing *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980)).

### A. *Prosecutorial Misconduct*

The Court will first address Defendant's argument that he is entitled to a new trial on the basis of prosecutorial misconduct.

Specifically, Defendant asserts that the prosecutor intentionally or, at best negligently, elicited testimony from Mr. Jackson that Defendant was involved in methamphetamine since 1995. This testimony, according to the Defendant, denied him of his right to a fair trial. The Government vehemently denies that it knew Jackson would testify regarding any time period prior to 2001. Indeed, the Government has presented the Court with a summary of Jackson's expected testimony which it delivered to defense counsel prior to Jackson's testimony. *See* Gov't Exh. B (attached to Resistance to Mot. for New Trial).

█ The Eighth Circuit Court of Appeals has identified a two-part test for reversible prosecutorial misconduct. First, the prosecutor's remarks or conduct must have been improper and such improper remarks or conduct "must have prejudicially affected defendant's substantial rights so as to deprive him of a fair trial." *United States v. Griffith*, 301 F.3d 880, 883 (8th Cir.2002) (citing *United States v. Beckman*, 222 F.3d 512, 526 (8th Cir.2000)); *see also United States v. Wadlington*, 233 F.3d 1067, 1077 (8th Cir.2000); *United States v. Beeks*, 224 F.3d 741, 745 (8th Cir.2000). If a defendant satisfies the first prong of the test, the court will go on to consider: "1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court." *Id.* at 883–84; *Wadlington*, 233 F.3d at 1077; *Beeks*, 224 F.3d at 745.

Defendant likens the present situation to the one presented in *United States v. Beeks*. In *Beeks*, the district court had granted defendant's motion in limine seeking to exclude certain evidence of prior convictions. *Beeks*, 224 F.3d at 746 During the government's case in chief, the prosecutor asked a series of questions which the Eighth Circuit found were intentionally designed to "impugn Beeks's credibility and to improperly convey to the jury that Beeks had some past criminal involvement," in clear contravention of the district court's ruling on the motion in limine. *Id.* The Circuit Court found clear prosecutorial misconduct which, coupled with the marginal overall evidence against Beeks, was sufficient to have warranted a mistrial. *Id.* at 747.

█ The Court finds *Beeks* clearly distinguishable from the present circumstances. Generally, prosecutorial misconduct must be viewed in light of its "cumulative effect" on the fairness a trial. However, the *Beeks* Court recognized that "a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." *Beeks*, 224 F.3d at 746 (citing *United States v. Johnson*, 968 F.2d 768, 771 (8th Cir.1992)). Here, Defendant has offered no evidence, and the record as a whole lacks any indication, that the prosecution knew Jackson had knowledge of Defendant's drug activity prior to 2001. There is, likewise, no indication that the prosecution planned to or intended to inject improper testimony into the trial. Indeed, the prosecutor informed the Court that she was surprised by Jackson's response that he first became aware of Defendant's involvement in methamphetamine in 1995. The prosecutor did not ask Jackson to elaborate on his answer and did not follow up on the improper testimony in any way. Rather, she immediately asked when Jackson first *obtained* methamphetamine from the Defendant, to which he replied "2001."

Likewise, the fact that Jackson later made statements to the effect that he was not purchasing drugs from the Defendant

"at that time," implicitly referencing an earlier time, does not create a cumulative effect. Viewing Mr. Jackson's testimony in its entirety, the Court does not believe it likely that the jury was misled into thinking that the Defendant was dealing drugs prior to the time alleged in the Indictment. Similarly, the record is devoid of evidence indicating that the prosecutor was attempting to emphasize Jackson's earlier "1995" response. Viewed in context, the line of questioning appears to be just what the prosecutor contends, *i.e.,* an attempt to clarify responses Jackson made to defense impeachment questions.

 Even assuming that the prosecutor's question which elicited the "1995" response is considered improper, the Court does not believe that the effect was so prejudicial as to deny Defendant a fair trial. First, as noted *supra,* the 1995 testimony was not repeated or emphasized in any way. Second, numerous witnesses, including Jackson, Lori Arnold, William Wilt, and Marco Armenta, testified that Defendant was involved in dealing methamphetamine in mid–2001. Additionally, Agent Todd Briggs testified about the Defendant's own post-Miranda statement wherein Defendant made several statements that corroborated witness testimony. The Court believes there was ample evidence introduced at the trial upon which a jury could have convicted the Defendant for the crime charged in the Indictment. Third, the Court read Defendant's requested limiting instruction to the jury, reminding the jury that Defendant was only on trial for the time alleged in the Indictment and instructing the jury to disregard testimony relating to times outside the scope of the Indictment. In general, courts must presume "that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and

strive to understand, make sense of, and follow the instructions given them." *Francis v. Franklin,* 471 U.S. 307, 326 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *see also United States v. Paul,* 217 F.3d 989, 999 (8th Cir.2000) (the jury is presumed to have followed all instructions). While true that cases may sometimes arise in which the risk of prejudice inhering in material put before the jury may be so great that even a limiting instruction will not adequately protect a criminal defendant's constitutional rights, the Court is simply not convinced that this is such a case. *See generally Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Finally, Defendant's own theory of defense was that he was a long-time methamphetamine user. The notion that one is "involved" with methamphetamine need not necessarily be interpreted to mean that one is distributing methamphetamine as opposed to merely using it.

### B. Amendment or Material Variance of the Indictment

Defendant next contends that the admission of the "1995" evidence and the later testimony regarding Defendant's methamphetamine dealing "at an earlier time," created an amendment and/or a material variance to the indictment, in violation of the Fifth and Sixth Amendments. Thus, the Court must next consider whether the insertion of such evidence into Defendant's trial forced the Defendant to defend against a charge not passed upon by the Grand Jury or deprived him of a substantial right.

 It is a well-settled principal of constitutional law that an Indictment may not be broadened through amendment except by Grand Jury itself. *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Nonetheless, not every variance in evidence amounts to

a constructive amendment of the Indictment:

> The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same. The difference between the two concepts is significant. A constructive amendment is reversible error per se, but a variance is subject to the harmless error rule. That difference stems from the underlying constitutional rights affected. A constructive amendment directly violates the Fifth Amendment right not to "be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." .... Conversely, a variance in the evidence affects the defendant's right to adequate notice, that is, the Sixth Amendment right "to be informed of the nature and cause of the accusation." The charging document does not change, only the evidence against which the defendant expected to defend. As a result, a variance does not require reversal per se, because a court must still examine whether or not the variance prejudiced the defendant's right to notice. Absent prejudice, the variance is harmless error.

*United States v. Stuckey,* 220 F.3d 976, 981 (8th Cir.2000) (internal citations omitted).

Defendant asserts that the introduction of evidence regarding methamphetamine involvement in 1995 created such a substantial variance in the evidence that it had the effect of constructively amending the indictment by altering or otherwise broadening its scope. Defendant cites *United States v. Ford* in support of his position. *United States v. Ford,* 872 F.2d 1231 (6th Cir.1989). In *Ford,* the Defendant had been convicted of a felony in November 1986. *Id.* at 1232. He was subsequently charged with possession of a firearm "on or about September 28, 1987." *Id.* at 1232. The trial judge instructed the jury that it would be sufficient for conviction to find that Ford had possessed a gun on a date reasonably near the date charged in the indictment. *Id.* During deliberations, the jury asked a question which was intended to determine if they could convict the defendant for having possessed a gun on August 9, 1987. *Id.* In response, the judge instructed the jury that, because the critical component for conviction was possession of a gun after the felony conviction, the jury could convict the defendant for possession of a firearm any time between November 1986 and September 1987. *Id.* The Sixth Circuit Court of Appeals found that a variance amounting to a constructive amendment had occurred because the trial judge had vastly broadened the time frame of the indictment and because defendant's gun possession in August 1987 was a distinctly separate incident from the gun possession in September 1987. *Id.* at 1236. Thus, the jury had convicted the defendant on criminal conduct which was not presented to a grand jury. *Id.*

The Court believes *Ford* presents a factual scenario which is insufficiently similar to the present situation to justify the same result. Even accepting that the "1995" and "earlier times" evidence amounted to a variance, Defendant is only entitled to a new trial if he establishes that the "variance between the charge and evidence at trial affected his substantial rights and caused him actual prejudice," *United States v. Wiley,* 29 F.3d 345, 352 (8th Cir.1994) (citing *United States v. Valentine,* 984 F.2d 906, 911 (8th Cir.1993)), or if the essential elements of the offense charged in the indictment were changed in actuality or in effect. *See e.g., United*

*States v. Emery,* 186 F.3d 921, 927 (8th Cir.1999). Defendant has failed to make the requisite showing.

In this case, with the singular exception of witness Jackson's comment that he knew Defendant to have been *involved* in methamphetamine since 1995, all of the evidence presented at trial directly corresponded to the time frame alleged in the Indictment. Even assuming that Jackson's "1995" comment evidenced some criminal activity by the Defendant, Defendant was only charged with participating in a *conspiracy to distribute* methamphetamine from April to October 2001, not with possession or use of methamphetamine at a time prior to 2001. The jury was carefully instructed that it could only return a conviction based on activity which took place within the time frame of the indictment. Additionally, the jury was carefully instructed that the Defendant was only on trial for the crime charged in the indictment and not for anything else. Having viewed the record as a whole, *see United States v. West,* 549 F.2d 545, 552 (8th Cir.1977), the Court simply cannot say that Defendant has proved that he was denied a substantial right, actually prejudiced, or called upon to answer charges for which he was not indicted. As such, the Court is convinced that any error which resulted from the injection of the "1995" evidence into the trial was harmless error.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion for New Trial (Clerk's No. 38) is DENIED.

IT IS SO ORDERED.