**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bartholomew COOPER, Defendant–**
**Appellant.**

No. 01–6395.

United States Court of Appeals,
Sixth Circuit.

April 7, 2003.

Before NELSON, COLE, and GILMAN, Circuit Judges.

OPINION

GILMAN, Circuit Judge.

In August of 1998, a federal grand jury returned a two-count indictment charging Bartholomew Cooper with being a felon in possession of firearms on or about July 28, 1998. The grand jury returned a superseding indictment in July of 2001, consisting of three counts that charged Cooper with being a felon in possession of firearms and ammunition "[f]rom on or about December 1997, the exact date being unknown to the Grand Jury, to on or about July 28, 1998." After a two-day trial, a jury found Cooper guilty on all three counts. The district court sentenced Cooper to a term of 57 months' imprisonment and 2 years of supervised release.

Cooper raises three issues on appeal: (1) that the district court erred in allowing impermissible cross-examination of a defense witness, (2) that the jury was not instructed in a way that ensured the unanimity of the verdict, and (3) that counts two and three of the superseding indictment should have been merged for sentencing. For the reasons set forth below, we **AFFIRM** the judgment of the district court on the cross-examination and jury-instruction issues, but **REMAND** the case with instructions to merge counts two and three for sentencing purposes.

## I. BACKGROUND

On July 18, 1998, Sandra Cooper, Bartholomew Cooper's wife, took a device that she believed to be a firearm silencer to the Memphis office of the FBI. The FBI referred her to the Bureau of Alcohol, Tobacco and Firearms (ATF). She reported to the ATF that she had found the device the day before in the couple's home. Sandra Cooper further reported that her husband had threatened her the previous evening during a violent altercation, and that he kept three rifles on the premises. FBI agent Jim Davis testified at trial that Sandra Cooper also told the agents that her husband was a convicted felon. Sandra Cooper, however, denies telling the agents of her husband's criminal status.

After confirming that Bartholomew Cooper was in fact a convicted felon, an ATF agent obtained Sandra Cooper's consent to conduct a search of the Coopers' home. The agents arranged for Sandra Cooper to lure her husband away from the house and then proceeded to search the premises. After finding the three rifles, the officers arrested Bartholomew Cooper and brought him back to the house for questioning. Cooper, after being advised of his *Miranda* rights, admitted that the rifles were his.

At trial, Sandra Cooper testified that she had accompanied her husband to a gun show in January of 1998, where he purchased two of the rifles found in the police

search. The third, she said, had been given to her husband by his grandfather. Sandra Cooper further testified about her marital problems and the altercation that had preceded her visit to the FBI office. FBI agent James Davis was called as a witness for the defense, relating that Sandra Cooper had told the agents that her husband was a convicted felon. Defense counsel's purpose in pursuing this line of testimony was to establish that Sandra Cooper had framed her husband because of their marital difficulties.

On cross-examination, the prosecution asked Davis about other portions of Sandra Cooper's statements to him, including details of the threat that Bartholomew Cooper allegedly made to her the preceding night. Defense counsel objected on the ground that this line of questioning was beyond the scope of the direct examination. The prosecution argued, however, that it was relevant to rebut the defense's implication that Sandra Cooper was maliciously trying to frame her husband. The district court overruled the defense's objection, stating that the defense counsel had opened the door to this line of questioning in the direct examination, and that it illuminated the context in which Sandra Cooper found and reported the object that she thought was a silencer.

In support of the defense's theory that Sandra Cooper had framed her husband, Bartholomew Cooper's counsel introduced the testimony of Lisa Michelle Moore, Cooper's ex-girlfriend, who is the mother of one of his children. Moore testified that she had a conversation with Cooper several months prior to his arrest, during which she expressed her desire to obtain a gun for protection. According to Moore, Cooper responded by telling her that she could take his rifles because he "had found out that he no longer had rights to have the weapons that he owned and that he wanted

to get rid of them." Moore testified that Cooper brought the rifles to her a month or two before June of 1998. She said that the weapons remained in her possession until they were retrieved by Sandra Cooper on July 27, 1998, the day before Sandra Cooper's visit to the FBI that resulted in her husband's arrest. Aaron Moore, Lisa Moore's brother, also testified that he was present when Sandra Cooper came to pick up the weapons from his sister. According to Lisa Moore, Sandra Cooper claimed that she was retrieving the guns at the request of her husband. But when Moore questioned Bartholomew Cooper about it later that evening, he was not aware that his wife had picked up the weapons and denied that he told her to do so.

The jury found Cooper guilty on all three counts. He was later sentenced to 57 months of imprisonment and 2 years of supervised release. This timely appeal followed.

## II. ANALYSIS

### A. The scope of the prosecution's cross-examination of defense witness Davis

Evidentiary rulings made by the district court are reviewed under the "abuse of discretion" standard. *Trepel v. Roadway Express*, 194 F.3d 708, 716–717 (6th Cir. 1999). "[W]e will leave rulings about admissibility of evidence undisturbed unless we are left with the definite and firm conviction that the [district] court . . . committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where it improperly applies the law or uses an erroneous legal standard." *United States v. Bartholomew* 310 F.3d 912, 920 (6th Cir.2002) (internal quotation marks omitted) (alteration in original).

■ The defendant argues that the government's cross-examination of Davis exceeded the scope of the defense's direct examination, in violation of Rule 611(b) of the Federal Rules of Evidence. Rule 611(b) provides that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." "Under Rule 611, a trial judge has considerable discretion and a judge's ruling will not be the basis for reversal of a criminal conviction unless a defendant's substantial rights are affected." *United States v. Moore*, 917 F.2d 215, 222 (6th Cir.1990). "The subject matter of the direct examination, within the meaning of Rule 611(b), has been liberally construed to include all inferences and implications arising from such testimony." *Id.* (internal quotation marks omitted).

Cooper maintains that although counsel for the defense questioned Agent Davis about the statements made to him by Sandra Cooper, it was impermissible for the government to question Davis more fully about the conversation. The district court found to the contrary, and our review of Davis's testimony convinces us that the court did not abuse its discretion in ruling that the cross-examination was within the scope of the direct examination. In addition, Cooper's substantial rights could not have been affected by Davis's testimony in light of the fact that (1) Sandra Cooper had already testified regarding the same conversation, and (2) Cooper's admission that the rifles were his makes the evidence of guilt in this case overwhelming.

## B. Jury instructions

■ The Sixth Amendment to the United States Constitution requires a unanimous verdict to convict the defendant in a criminal trial. *United States v. Smedes*, 760 F.2d 109, 112 (6th Cir.1985). In the present case, the district court gave the jury a generic instruction about unanimity. Although he failed to object or offer an alternative at trial, Cooper now argues that the district court should have given a jury instruction requiring the jurors to unanimously agree on a specific date that he possessed the firearms. The government counters that its evidence proved possession of the rifles as charged in the superseding indictment, which specified the date of possession as "[f]rom on or about December, 1997, the exact date being unknown to the Grand Jury, to on or about July 28, 1998." *See United States v. Ford*, 872 F.2d 1231, 1236 (6th Cir.1989) (stating that "[w]hen 'on or about' language is used in an indictment, proof of the exact date of an offense is not required as long as a date reasonably near that named in the indictment is established.").

"The trial court is vested with broad discretion in formulating its charge [to the jury] and will not be reversed unless the charge fails accurately to reflect the law." *United States v. Kimes* 246 F.3d 800, 810 (6th Cir.2001) (internal citations and quotation marks omitted). Although generally "jury instructions are reviewed for an abuse of discretion," *id.*, Cooper failed in this case to object to the district court's general unanimity instruction. "Where a party fails to object at trial, reversal is required only in those exceptional circumstances where necessary to avoid a miscarriage of justice." *United States v. Hatchett*, 918 F.2d 631, 643 (6th Cir.1990).

Cooper admits that in most cases a general unanimity instruction is sufficient to safeguard the Sixth Amendment rights of the defendant. He points out, however, that a more specific instruction is called for if "a conviction will occur as a result of different jurors concluding that the defen-

438

dant committed different acts...." *United States v. Busacca*, 863 F.2d 433, 437 (6th Cir.1988). In the present case, according to Cooper, "some jurors might have convicted the defendant on the basis of his possession of firearms on July 28, 1998, while others may have believed that he possessed the firearms on a date or dates other than July 28." Cooper relies on *United States v. Ford*, 872 F.2d 1231 (6th Cir.1989), to support this argument. *Ford*, however, is easily distinguishable. In *Ford*, the court reversed the defendant's conviction because the instruction to the jury permitted it to reach a guilty verdict based upon possessing firearms on a date that fell well outside the date contained in the indictment. That is not the case here.

Cooper's argument is premised upon the supposition that some of the jurors might have believed Lisa Moore's testimony. But any juror who believed Moore's testimony would still have believed that Cooper was a felon-in-possession who retained his weapons until a date in April or May of 1998 when he allegedly delivered his firearms to Moore. Jurors who did not believe Moore's testimony, in contrast, would have believed that Cooper was a felon-in-possession from the time he obtained the rifles until his arrest on July 28, 1998. Either way, it is impossible to comprehend how the jury would not have reached unanimity regarding the charge in the indictment, because all of the jurors would have believed that Cooper was a felon-in-possession at least until the day he purportedly delivered his weapons to Moore, a time frame that is well within the dates alleged in the indictment. In light of the language in the indictment, we conclude that the instructions to the jury did not violate Cooper's Sixth Amendment right to a unanimous verdict. We can imagine no scenario where the jurors in this case did not unanimously find Cooper guilty of the offense as charged.

## C. Merger of counts two and three of the superseding indictment at sentencing

Both parties agree that counts two and three of the indictment should have been merged at sentencing, and that it was error for Cooper to have been sentenced on both counts. Count two charged Cooper with possession of two firearms, while count three charged him with possession of ammunition. These counts should have been merged because the ammunition which is the subject of count three was found in the same place as the two firearms that were charged in count two. The $100 special assessment imposed because of count three should therefore be vacated. *United States v. Adams*, 214 F.3d 724, 728 (6th Cir.2000) (stating that "only one offense is charged ... regardless of the number of firearms involved, absent a showing that the firearms were stored or acquired at different times or places"). We therefore reverse this aspect of the case and remand to the district court with instructions to vacate the $100 special assessment imposed because of count three.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court on the cross-examination and jury-instruction issues, but **REMAND** the case with instructions to merge counts two and three for sentencing purposes.