*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee,*

    *v.*

ELTON NANCE,

          *Defendant-Appellant.*

No. 05-6036

---

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 04-10038—James D. Todd, Chief District Judge.

Argued: July 26, 2006

Decided and Filed: April 6, 2007

Before: GIBBONS and ROGERS, Circuit Judges; HOLSCHUH, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jeff Mueller, MUELLER & ELLIS, Jackson, Tennessee, for Appellant. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** Jeff Mueller, MUELLER & ELLIS, Jackson, Tennessee, for Appellant. R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

    GIBBONS, J., delivered the opinion of the court, in which ROGERS, J., joined. HOLSCHUH, D. J. (pp. 6-13), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

    JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Richard Nance was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The district court determined that Nance was an armed career criminal and sentenced him to 235 months, which was at the bottom of the advisory guidelines range. Nance appeals his conviction and sentence. For the following reasons, we affirm the district court's judgment.

---

[*]The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

1

I.

On December 12, 2003, members of the Jackson police department's gang task force went to 228 Shelby Street in Jackson, Tennessee to serve an arrest warrant on Martedis McPhearson, who lived at the residence. The officers arrested McPhearson. As a result of a routine patdown of McPhearson during which drugs were discovered, some officers went for and obtained a search warrant for the residence. While the warrant was being obtained, officers secured the residence and, in so doing, found Nance in a bathroom. Upon executing the search warrant, officers discovered a locked safe containing a firearm. Nance told the officers which key to use to open the safe.

Nance was subsequently indicted and charged with being a felon in possession of a firearm "on or about December 12, 2003," which was the date of Nance's arrest. At trial, two of the investigating officers testified as to the events of December 12 – specifically, the discovery of Nance in the house and the subsequent search and discovery of the locked safe containing the firearm. Lieutenant Patrick Willis then testified that Nance told the investigating officers which key would unlock the safe containing the firearm. Terry Wayne Curry, an informant who had been assisting the gang task force, testified that he had seen Nance open the same safe using a key on a prior occasion. Curry also testified that he had seen a firearm at the residence on a prior occasion that was similar to the one recovered from the safe. Lieutenant Willis also testified that, after Nance was arrested, he provided a statement to the police in which he admitted handling the firearm in question. Nance stated that four days prior to his December 12 arrest he had been asked to put the gun away by Nicole Parker, who was at the house, and that he did so because children were sometimes at the house. Nance explained in his statement that his fingerprints would therefore be found on the gun and the safe because of his handling of it four days prior. Nicole Parker testified that she never handled the firearm nor asked Nance to put the firearm away.

The jury convicted Nance of the single count of being a felon in possession of a firearm. At sentencing, the district court found Nance to be an armed career criminal. The district court applied the armed career criminal enhancement and sentenced Nance to 235 months imprisonment. Nance timely appealed his conviction and sentence.

II.

On appeal, Nance argues that the district court erred by: (1) denying his request for a jury instruction on the required nexus between the firearm and interstate commerce; (2) admitting evidence that Nance possessed the firearm four days prior to the date charged in the indictment, thereby permitting a constructive amendment to or unlawful variance from the indictment; (3) applying the armed career criminal enhancement; and (4) imposing an unreasonable sentence.[1]

We turn first to Nance's challenge to the jury instruction regarding the requirement of the firearm's nexus to interstate commerce. At trial, Nance requested that the jury instructions state as an element of the offense that the firearm affected, as opposed to traveled in, interstate commerce. The district court denied Nance's request. The district court instructed the jury that the government must prove that the firearm in question had traveled in interstate commerce prior to Nance's possession of it and that this fact could be proven by showing that prior to the date of the crime the

---

[1]We also note that, two days prior to oral argument in this appeal, Nance filed a *pro se* supplemental brief in which he argued that the firearm was obtained as the result of an unlawful seizure and search. Nance further contended that his counsel had refused to file a suppression motion or raise the issue on appeal. Under Federal Rule of Criminal Procedure 12(b)(3)(c), motions to suppress evidence must be made prior to trial, and the failure to bring such a pretrial motion constitutes a waiver of the issue. *United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006) (referencing Rule 12(e), the subsection addressing waiver of 12(b)(3) defenses that a party did not raise before the trial court's pretrial motion deadline). We are therefore unable to consider the admissibility of the firearm on appeal.

firearm had crossed a state line. Where a proper request for a jury instruction is made in the district court, this court reviews the denial of that request under the abuse-of-discretion standard. *See United States v. Ursery*, 109 F.3d 1129, 1136 (6th Cir. 1997). The jury was not required to find that the firearm had a substantial effect on interstate commerce. *See United States v. Henry*, 429 F.3d 603, 619-20 (6th Cir. 2005). Rather, the instruction given was sufficient to establish an interstate nexus. *See id.* The district court did not abuse its discretion in denying Nance's request.

Nance next argues that the court permitted a constructive amendment to or unlawful variance from the charge set forth in his indictment. According to Nance, because the jury had before it evidence that he actually possessed the firearm on December 8, there is a substantial likelihood that he was convicted on that basis rather than for constructively possessing the firearm on December 12, which is the date alleged in the indictment. We review *de novo* whether there has been an amendment to the indictment or a variance. *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998).

"The Fifth Amendment guarantees that an accused be tried only on those offenses presented in an indictment and returned by a grand jury." *Id.* (citing *Stirone v. United States*, 361 U.S. 212, 217-19 (1960)). There are "two basic categories of indictment modification: 'An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A variance occurs when the charging terms of an indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.'" *Martin v. Kassulke*, 970 F.2d 1539, 1542 (6th Cir. 1992) (quoting *United States v. Ford*, 872 F.2d 1231, 1235 (6th Cir. 1989)) (emphasis omitted). An amendment is considered *per se* prejudicial because it "directly infringes the defendant's right to know of the charges against him by effectively allowing the jury to convict the defendant of a different crime than that for which he was charged." *Martin*, 970 F.2d at 1542 (citing *Ford*, 872 F.2d at 1235).

In contrast to an amendment, a "variance occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment." *Manning*, 142 F.3d at 339 (citing *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). A variance is not reversible error unless the defendant demonstrates prejudice. *See Martin*, 970 F.2d at 1542. If a variance "infringes too greatly upon" the defendant's Sixth Amendment right to be "informed of the nature and cause of the accusation" against him, then it is considered a constructive amendment and is accorded the per se prejudicial treatment of an amendment. *Id.* (citing *Ford*, 872 F.2d at 1235). "A variance crosses the constructive amendment line only when the variance creates 'a substantial likelihood' that a defendant may have been convicted of an offense other than that charged by the grand jury." *Manning*, 142 F.3d at 339 (quoting *Hathaway*, 798 F.2d at 911).

In this case, there was not a constructive amendment to the indictment. Nance was charged with and convicted of being a felon in possession of a firearm on or about December 12, 2003. The terms of the indictment were not altered.

Nance's variance argument more closely approximates what occurred in this case. Put simply, the jury heard evidence that could permit an inference of possession on two different dates–one charged in the indictment and one not charged. The evidence as to the charged date, December 12, was that Nance told officers on the day of his arrest which key would unlock the safe containing the firearm. The evidence of possession on December 8 came from Nance's December 12 statement to police in which he admitted putting the gun away in the safe four days earlier. The December 8 evidence was relevant to establish Nance's access to the safe and his ability to exercise

control over the weapon on December 12 and properly admissible. If this evidence could be considered a variance, its admission did not prejudice defendant.[2]

Nance next challenges the district court's application of the armed career criminal enhancement. This court reviews *de novo* a district court's determination that a defendant should be sentenced as an armed career criminal. *United States v. Sawyers*, 409 F.3d 732, 736 (6th Cir. 2005). Under the advisory sentencing guidelines, the minimum offense level for an armed career criminal is 33. *See* U.S.S.G. § 4B1.4(a), (b)(3)(B). A person possessing a firearm after three prior convictions for serious drug offenses or violent felonies is an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See Shepard v. United States*, 544 U.S. 13, 15 (2005). The district court found that Nance had four prior violent felonies as listed in his PSR: two armed robberies, one aggravated burglary, and one facilitation of armed robbery. Nance does not dispute the two armed robberies; he does, however, challenge the district court's reliance on the other two prior felonies.

With regard to the aggravated burglary conviction, Nance claims that the government failed to adequately prove the existence of this prior violent felony. At the outset, it is important to note that the ACCA "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle." *Shepard*, 544 U.S. at 15-16. In *Shepard*, the Court clarified what evidence might be considered when a court analyzes whether a plea of guilty to a nongeneric burglary statute necessarily admitted elements of the generic offense, thereby satisfying the ACCA's generic-burglary requirement. *Id.* at 26. On appeal, Nance claims that, under *Shepard*, the district court should not have considered the PSR's presentation of his aggravated burglary conviction. Nance does not contest, however, that *Shepard* only applies to nongeneric burglary statutes. Nance argues, albeit without citing any authority, that Tennessee has a nongeneric aggravated burglary statute. In fact, the weight of authority indicates that Tennessee's aggravated burglary statute is generic. The Supreme Court in *Shepard* reaffirmed "that a court sentencing under the ACCA could look to statutory elements . . . to determine whether an earlier conviction after trial was for generic burglary." *Id.* at 16. Therefore, turning to the statutory elements of Tennessee's aggravated burglary statute, this court has previously said that "[a]ggravated burglary occurs when an individual enters a habitation 'without the effective consent of the property owner' and, . . . intends to commit a felony . . . ." *Sawyers*, 409 F.3d at 737 (quoting *State v. Langford*, 994 S.W.2d 126, 127 (Tenn. 1999) (citing Tenn. Code Ann. §§ 39-14-402 and 39-14-403)). Thus,

---

[2]While Nance's argument about the December 8 evidence is limited to the constructive amendment or unlawful variance issue, the record reflects some confusion about the proper use of the December 8 evidence. The government seems to have taken the position in its comments to the court that it did not matter whether Nance was found to have possessed the weapon on the day of his arrest or on the earlier date. The district court endorsed this view, noting that the two dates were close enough together to fall within the "on or about" language that is typically included in jury instructions.

Underlying this discussion is an apparent misconception about what the government was required to do. The government's obligation was to prove the particular possession charged, not some earlier occasion of possession. *See Ford*, 872 F.2d at 1236-37. The "on or about" language permits the jury to conclude that the offense charged occurred on some date reasonably close to the one contained in the indictment, but does not permit conviction of an uncharged offense that occurred in close temporal proximity to the charged offense. *See id.* at 1236. And the admission of the December 8 evidence was proper because it related to elements of the charged offense, not because the government was permitted to prove an instance of possession other than that charged.

With the exception of a passing comment in closing rebuttal argument, in response to defense counsel's argument that the government was attempting to convict Nance for the offense on both dates, any confusion occurred outside the presence of the jury. And Nance does not complain about the prosecutor's remark or any other event at trial related to the December 8 evidence, other than making an argument that a constructive amendment or unlawful variance occurred. In fact, Nance requested a jury instruction that would have permitted the jury to consider whether he possessed the weapon on December 8 innocently or out of necessity. The district court refused the request. If the instruction had been given, defendant's request would have increased his chances of conviction for a crime with which he was not charged.

aggravated burglary in Tennessee clearly comports with *Shepard*'s definition of a generic burglary as "committed in a building or enclosed space." In short, Tennessee aggravated burglary represents a generic burglary capable of constituting a violent felony for ACCA purposes.

With regard to the facilitation of armed robbery conviction, Nance argues that this is not a violent felony because (1) facilitation under Tennessee law is a separate, complete offense independent from a robbery offense;[3] (2) the independent offense of facilitation does not require criminal responsibility for the underlying robbery offense; and therefore, (3) facilitation cannot be considered a violent felony. This court rejected the same argument in the context of facilitation of aggravated burglary in *Sawyers*. *See Sawyers*, 409 F.3d at 737-40 (reasoning that the underlying felony constitutes "an element" that can be examined by the court because criminal facilitation in Tennessee requires the government to show that the underlying crime actually occurred). In *Sawyers*, the court held "that facilitation of aggravated burglary was, categorically, a violent felony under the ACCA." *Id.* at 740. The reasoning of *Sawyers* applies with even greater force to the crime of facilitation of armed robbery. *See* Tenn. Code Ann. § 39-13-401 ("Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear."). Nance's challenges to the district court's treatment of aggravated burglary and facilitation of armed robbery fail.

Finally, Nance argues that the district court's sentence was unreasonable. Nance claims that the district court failed to adequately consider his conduct and his ability to be rehabilitated. When a defendant challenges a district court's sentencing determination, this court determines whether the sentence is unreasonable. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). As this court has repeatedly acknowledged, although a district court must clearly articulate its reasoning for imposing a particular sentence, it need not explicitly recite the § 3553(a) factors in its sentencing determination. *See United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006); *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *United States v. Kirby*, 418 F.3d 621, 626 (6th Cir. 2005). Because the district court sentenced Nance at the bottom of the advisory guideline range, Nance's sentence is credited with a "rebuttable presumption of reasonableness" and it is incumbent on Nance to establish that his sentence was unreasonable. *See Williams*, 436 F.3d at 708.

Nance has failed to show that his sentence was unreasonable. The district court acknowledged the advisory nature of the guidelines and proceeded to hear argument from Nance's trial counsel on the nature and circumstances of the offense and the alleged lack of evidence to support the conviction and the imposition of the ACCA enhancement. Nance presented no evidence to the district court at the sentencing hearing. In imposing sentence, the district court noted that, although a PSR may report "good things" and "bad things" about a defendant, Nance's PSR reported only bad things and no good things had been presented to the court at the sentencing hearing. The district court concluded that the application of the ACCA enhancement was reasonable in light of Nance's eleven or twelve prior convictions and his 23 criminal history points, which is almost twice as many as needed to get to the highest criminal history category. The district court clearly articulated its reasoning for imposing the sentence that it did. In light of Nance's extensive criminal history, the sentence imposed, which was within the guideline range, was not unreasonable.

III.

For the foregoing reasons, we affirm the judgment of the district court.

---

[3]Under Tennessee law, "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility [for the offense,] . . . the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a).

---

**CONCURRING IN PART, DISSENTING IN PART**

---

HOLSCHUH, District Judge, concurring in part and dissenting in part. I concur in the majority opinion on all issues except the question of whether there was a constructive amendment to the indictment. Because I strongly believe that there is a substantial likelihood that Nance was convicted of a crime other than the one charged in the indictment, I would reverse the conviction.

## I.     The Importance of *United States v. Ford*

The constructive amendment issue, in my opinion, is governed by this court's prior decision in *United States v. Ford*, 872 F.2d 1231 (6th Cir. 1989), which is virtually on all fours with the facts of the present case. In *Ford*, the indictment charged the defendant with possession of a firearm on or about September 28, 1987. At trial, the government presented evidence that the defendant possessed a firearm during an incident of domestic violence on September 28, 1987. However, the government also presented evidence that the defendant had purchased a firearm on November 2, 1986, and that he had shot himself in the hand on August 9, 1987. The judge instructed the jury that it was sufficient if the defendant possessed the firearm on a date reasonably near the date alleged in the indictment. During deliberations, the jury asked whether it could find the defendant guilty if he possessed the firearm on August 9, 1987. The judge instructed the jury that the critical factor was whether the defendant possessed a firearm after he had been convicted of a felony, and that the time frame could include any date between November 2, 1986 and September 28, 1997.

On appeal, this court properly found that this instruction resulted in a constructive amendment of the indictment, which was *per se* prejudicial. The court acknowledged that proof of the exact date was not required as long as a date reasonably near the date alleged was established, but then stated a very important rule that governs the present case:

> [W]e believe the "reasonably near" rule . . . contemplates *a single act the exact date of which is not precisely known* by the grand jury and, therefore, does not need to be proved with exactitude. Here, the November 1986 (purchase), August 1987 (incident on highway), and September 1987 (domestic violence) events involved substantially separate incidents of alleged possession. Absent language indicating the grand jury's intent to permit a conviction based on more than one incident of criminal conduct, a court cannot assume that a grand jury would have included in its indictment an additional incident of criminal conduct. See *Bain*, 121 U.S. at 10, 7 S.Ct. at 786. It is therefore possible that the jury convicted Ford based on an incident of possession not intended by the grand jury to be part of the charge. This frustrates the fifth amendment grand jury indictment guarantee. It is also possible that some jurors may have found that Ford possessed a firearm on September 28, 1987, while others may have found possession on August 9, 1987, and others on still another date all within the time period stated in the district judge's instruction. It is therefore uncertain whether the guilty verdict returned on Count III was unanimous as is required by Federal Rule of Criminal Procedure 31(a).

> We therefore hold that the modification of the possession charge in Count III at trial by the court constituted a constructive

amendment of the indictment. This constructive amendment was prejudicial per se and warrants reversal of Ford's conviction on Count III.

*Ford*, 872 F.2d at 1236-37 (emphasis added) (footnote omitted).

## II.        The Majority Opinion

I agree with the majority concerning the applicable law regarding constructive amendments and variances. I disagree, however, with the majority's conclusion that there was no constructive amendment in this case and that, if there was a variance, it was not prejudicial to the defendant.

It is of great importance that the majority opinion recognizes that both the government and the district court were in error in their "apparent misconception about what the government was required to do." Footnote 2 of the majority opinion states:

> While Nance's argument about the December 8 evidence is limited to the constructive amendment or unlawful variance issue, the record reflects some confusion about the proper use of the December 8 evidence. The government seems to have taken the position in its comments to the court that it did not matter whether Nance was found to have possessed the weapon on the day of his arrest or on the earlier date. The district court endorsed this view, noting that the two dates were close enough together to fall within the "on or about" language that is typically included in jury instructions.
>
> Underlying this discussion is an apparent misconception about what the government was required to do. The government's obligation was to prove the particular possession charged, not some earlier occasion of possession. *See Ford*, 872 F.2d at 1236-37. The "on or about" language permits the jury to conclude that the offense charged occurred on some date reasonably close to the one contained in the indictment, but does not permit conviction of an uncharged offense that occurred in close temporal proximity to the charged offense. *See id.* at 1236.

Although my colleagues recognize this established law, they find that: (1) the admission of evidence of the uncharged offense on December 8th was admissible because it "was relevant to establish Nance's access to the safe and his ability to exercise control over the weapon on December 12;" (2) the closing argument of the government regarding the separate uncharged offense on December 8th involved only "a passing comment in closing rebuttal argument;" and (3) Nance's request for a jury instruction regarding possession of the firearm on December 8th would have exacerbated the problem and "increased his chances of conviction for a crime with which he was not charged."

In my opinion, none of these arguments serves to distinguish the controlling case of *Ford* and to answer the contention that Nance was convicted in violation of his Fifth Amendment right to be tried only on an offense presented in an indictment returned by the grand jury.

## III.        Defense Counsel's Objection to Evidence of Offense Not Charged in the Indictment

Prior to opening statements, and outside the jury's presence, Mr. Mueller, counsel for the defendant, argued that introduction of evidence of actual possession of the firearm on December 8th constituted a constructive amendment of the indictment.

In addition, your Honor, there are other issues. I am still taken aback by the prosecution's change of theory at the last minute here. They indicted for an offense occurring on the 12th. Never before today have we heard anything about the 8th being the date that they are seeking to prove that he possessed this gun. Now, today, he's seeking to show to the jury that he possessed it on the 8th despite indicting him on the 12th.

The statement on the 8th brought up in hearings last week had – the only evidence we had from the prosecution at that time was that it would be a credibility issue, an issue about having knowledge of the gun previously. Here today, we have the prosecution totally surprising us with saying, Hey, we're not after him on the 12th. We're after him on the 8th.

To me, your Honor, that is a variance from the indictment, and, to me, I think it's an instructive [sic] amendment. But should the court view it as a variance, it would be a variance from the indictment constituting [sic], in effect, the substantial rights of the defendant; therefore, being a constructive amendment. And I'm citing *Hathaway* and a more recent – *Hathaway* is an '86 Sixth Circuit case I'm sure the court's familiar with regarding variances. And a more recent case, *Haas*. I can pass both of those forward if the court would like. I only have one copy of them. I haven't had lunch. I've been researching because this all really has taken me by surprise today.

But your Honor, the defendant is clearly prejudiced. We're preparing for one date, a separate unrelated incident. There's no evidence that handling the gun on the 8th to put it up and keep it away from the kids has anything at all to do with the indicted date of the 12th when the officers came in and took possession of the house and later acquired a search warrant. Totally unrelated, disparate incidents.

Trial Transcript at 24-25.[1]

The government's response was:

Mr. Mueller certainly should have understood that a statement by his client admitting possessing the weapon that he's charged with is, in fact, material to the question of whether he had constructive possession or actual possession of a firearm on Friday. So in my

---

[1]The reference to "*Hathaway*" is a reference to *United States v. Hathaway*, 798 F.2d 902 (6th Cir. 1986), a decision in which the court discusses at some length the difference between a constructive amendment of the indictment and a variance between the terms of the indictment and the evidence presented.

The reference to "*Haas*" is obviously a reference to *United States v. Haas*, 35 Fed. Appx. 149 (6th Cir. 2002). In that case, defendant was charged in one count of an indictment as being a felon in possession of a firearm on or about February 12, 1998. The government presented no evidence that the defendant possessed the firearm on that date, but did offer evidence that he possessed the firearm on February 13 and 14, 1998. The court found that even if there was a variance, defendant had not shown that any substantial rights were affected. Citing *Ford*, the court noted that the government need not prove that the offense occurred on the exact date alleged in the indictment, if it proves that the offense occurred reasonably near that date. *Id.* at 153. Because *Haas* involved a "single act the exact date of which is not precisely known," it is clearly distinguishable from the present case, which involves two separate incidents of possession. *Ford*, 872 F.2d at 1236.

> wildest imaginations [sic], I don't know what fairness Mr. Mueller's talking about.

*Id.* at 27.

Government counsel was aware, of course, that there was no evidence of any kind showing that the defendant had actual possession of the firearm on Friday, December 12th.

The judge, who had earlier that morning denied defendant's motion in limine which sought to exclude Nance's statement admitting that he had actual possession of the firearm on December 8th, responded as follows:

> And your objection is exactly the objection I ruled on this morning and denied, and the same ruling applies now. The evidence that this defendant possessed the firearm on December 8th is relevant in two ways.
> Number one, I will tell the jury the government does not have to prove that he possessed the firearm on the exact date alleged in the indictment but reasonably close to that date. It's relevant on that issue.
> Secondly, it's relevant to show that the defendant perhaps knew that the gun was in the safe, which goes to constructive possession of the firearm on December the 12th.
> So for those two reasons, the objection is denied, and that evidence is admissible.

*Id.* at 30-31.

## IV.    The Introduction of the Evidence of a Separate Offense Not Charged in the Indictment

The very last prosecution witness presented by the government in the trial of this case was Patrick Willis, an officer of the Jackson Police Department. He testified on direct examination regarding a statement made by the defendant about events that occurred on December 12th and *also* on December 8th. On cross-examination, defense counsel asked:

> Q.    The date of this arrest was December 12, 2003, right?
> A.    Correct.
> Q.    And that was a Friday; right?
> A.    Correct.
> Q.    And in his statement he said he had handled the gun the previous Monday.
> A.    Yes, sir.
> Q.    Four days difference between them.
> A.    Yes, sir.

Trial Tr. at 99.

I agree with the district court and with the majority that Nance's admission that he had placed the firearm in the safe on December 8th could be relevant to the question of whether he had

constructive possession of the firearm on December 12th as charged in the indictment.**2** However, admission of that evidence created a substantial risk that the defendant would be convicted of an offense other than the one charged in the indictment. Because there were two separate alleged incidents of possession, the trial judge, at the very least, and in accordance with his ruling on defendant's objection, should have instructed the jury that the evidence of actual possession on December 8th was presented solely for the limited purpose of being evidence to establish an alleged constructive possession of a firearm on December 12th, and because the defendant was not charged in the indictment with possession of a firearm on December 8th, such evidence could be not be considered by the jury as evidence of any criminal conduct of the defendant on December 8th.

The evidence of this separate, uncharged incident of possession, however, was submitted to the jury without any limitation. As discussed later in this opinion, this error, combined with certain remarks by government counsel during closing argument and the later instructions given to the jury, created a substantial likelihood that the jury convicted the defendant for actual possession of the firearm on December 8th, an offense not charged in the indictment.

## V.   The Jury Instructions

In the bench conference regarding the court's proposed instructions to the jury, the defense attorney again brought to the judge's attention the problem facing the defense as a result of the introduction of evidence of Nance's statement concerning actual possession of the firearm on December 8th. Defense counsel told the judge, "[w]hen I came here today I thought we were litigating something on Friday the 12th instead of some Monday the 8th kind of thing." Trial Tr. at 113.

Because of his concern about the fact that the jury now had evidence of defendant's actual possession of the firearm in question on December 8th, defense counsel asked for an instruction based on an innocent possession defense regarding the December 8th possession. The judge refused the requested instruction because the evidence concerning the December 8th possession was not sufficient to support an innocent possession defense. *Id.* at 114.**3**

In his instructions to the jury, the judge emphasized that the jury could find the defendant guilty of *either* actual possession or constructive possession.

> If two or more people both possess a firearm, that's called joint possession. If you find that the defendant either had actual possession of the firearm or that he had the power and intention to exercise control over it, what we call constructive possession, even though it was not in his physical possession, you may find that the government has proven possession. . .
>
> Now, I want to explain something about possession. The government does not necessarily have to prove that the defendant physically possessed the firearm for you to find him guilty of this

---

**2**Even if relevant, the probative value of the evidence could be substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Fed. R. Evid. 403.

**3**The majority faults defense counsel for having requested a jury instruction that would have permitted a jury to consider whether the defendant possessed the firearm on December 8th innocently or out of necessity. They contend that if the requested instruction had been given, it would have increased defendant's chance of being convicted of a crime with which he was not charged. It seems to me that, faced with the overruling of his objection to the admissibility of this evidence, defense counsel was forced to confront that evidence with whatever defense was available. To do less might have constituted ineffective assistance of counsel.

crime. The law recognizes two kinds of possession, actual possession and constructive possession. Either one of these, if proved by the government, is enough to convict.

To establish actual possession, the government must prove that the defendant had direct physical control over the firearm and knew that he had control of it.

To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the firearm and knew that he had this right and that he intended to exercise physical control over the firearm at some time, either directly or through some other person. For example, if you left something with a friend intending to come back later and pick it up or intending to send someone to pick it up for you, you would have constructive possession of it while it was in the actual possession of your friend.

*Id.* at 123-24, 124-25.

The instructions actually weakened the government's case for constructive possession of the firearm on December 12th, because the jury was told:

But understand that just being present where something is located does not equal possession . . .

Likewise, mere association with another person who does, in fact, control the firearm or property where the firearm is located is not sufficient by itself to find – to support a finding of constructive possession of such firearm.

*Id.* at 125.

The jury's ability to find the defendant guilty of actual possession on December 8th was also emphasized by the judge's instruction to carefully consider defendant's statement to the police and to "give the statement such weight as you think it deserves in light of all the other evidence." *Id.* at 128. Moreover, the jury was also instructed:

The indictment charges that the crime happened on or about December 12, 2003. The government does not have to prove that the crime happened on that exact date, but the government must prove that the crime happened reasonably close to that date.

*Id.* at 126.

## VI.      The Instruction on Actual Possession Necessarily Referred to the Uncharged Offense on December 8th

It is undisputed that on the date of the offense charged in the indictment, December 12th, the defendant did not have actual possession of the firearm. It was found by the police in a safe in the home of a friend of the defendant. The *only* method of convicting the defendant of the offense charged in the indictment was to prove that he had constructive possession of that firearm, *i.e.,* he had the right to exercise physical control over it, knew that he had that right, and intended to exercise that right. By instructing the jury, however, that they could find the defendant guilty of actual possession, the judge necessarily had to be referring to the uncharged offense that occurred on December 8th and *not* the offense charged in the indictment.

## VII.   The Closing Arguments

In closing arguments, counsel for defendant said:

> The best I can tell is they want you to either convict the man for putting up a gun on Monday, which they brought competing evidence against, or they want you to convict the man because he was at the scene where it was recovered on Friday. I can't quite figure out how to jibe the two of them. . .
>
> They're asking you to convict him on Friday basically because he was there. If they're asking you to convict for what happened on Monday, four days earlier, he's asking you to convict him for putting up a gun at the request of Nicole, even though they brought Nicole in to say otherwise. So I've been surprised by a lot of things today, and I'm confused about what exactly it is they're wanting you to convict him for.

Tr. of Closing Arg. at 17, 18-19.

The prosecution responded to this statement in its closing rebuttal argument. The majority characterizes the prosecutor's response as nothing more than "a passing comment in closing rebuttal argument." In my opinion, it was much more damaging than the majority acknowledges. Government counsel, in rebuttal, argued as follows:

> Mr. Mueller . . . said there was no quality evidence or direct evidence that puts his client in possession of this firearm. Is his client's statement not quality evidence? He said he was in possession of it, said he had it. Now, if you believe this statement, then he's in direct possession of this firearm, and that's direct evidence that he's in possession of the firearm. He admits it.
>
> ***
>
> At some point in time this defendant had all three possessions that the court will instruct you on. He was in actual possession when he took the gun from Nicole. He was in constructive possession of this firearm the whole time it was in that box, and that being on December the 12th and also on December the 8th. And he was in joint possession of it if you believe that Martedis McPhearson also had access to that box, although there's not been any proof of that at all.

*Id.* at 20, 22.

## VIII.   Conclusion

Although defense counsel objected to the introduction of evidence regarding a separate incident on December 8th involving actual possession of a firearm, the trial judge nevertheless overruled this objection on the ground that the December 8th incident was relevant to the crime of constructive possession of the firearm on December 12th as charged in the indictment. When evidence of the December 8th incident was admitted, however, the trial judge did not instruct the jury that this evidence was to be considered only as relevant evidence of the crime charged in the indictment, and not as evidence of a separate crime not charged in the indictment.

Thereafter, the prosecution's closing argument and the trial court's instructions to the jury permitted and, indeed, encouraged, the jury to find defendant guilty of the separate crime of actual possession of a firearm on December 8th. In my view, this is clearly a case in which "the presentation of evidence and jury instructions . . . so modifi[ed] essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Hathaway*, 798 F.2d at 910. Moreover, these trial errors created a problem similar to the one addressed by the court in *Ford*. Because it is possible that some members of the jury convicted Nance for possession of the firearm on December 8th, while others convicted him for possession of the firearm on December 12th, it is not clear whether the guilty verdict was unanimous as required by Federal Rule of Criminal Procedure 31(a).

The defendant's conviction, therefore, should be vacated. Accordingly, I respectfully dissent.