**UNITED STATES of America,
Plaintiff,**

v.

**Edward SCHNEIDER, Defendant.**

**Case No. 10–20392.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 9, 2013.

Bruce C. Judge, Erin Shaw, Tauras N. Ziedas, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

Edward C. Wishnow, Birmingham, MI, for Defendant.

***OPINION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT 7 OF THE THIRD SUPERSEDING INDICTMENT***

DAVID M. LAWSON, District Judge.

This matter is before the Court on defendant Edward Schneider's post-trial

motion for judgment of acquittal on count seven of the third superseding indictment. The indictment charged Schneider in three counts: (1) conspiracy to defraud Fifth Third Bank (count one); (2) corruptly giving an employee of Fifth Third Bank money in connection with bank transactions (count three); and (3) conspiracy to defraud Standard Federal Bank (count seven). At the close of the government's case, Schneider moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the only evidence adduced at trial on count seven showed acts by Schneider that predated the date range of the conspiracy alleged in that count of the indictment by eleven months. On March 26, 2013, a jury found Schneider guilty as charged on counts one and seven and guilty of a lesser included offense on count three. After the jury returned its verdict, Schneider renewed his motion for judgment of acquittal, arguing that there was an unlawful variance between the indictment and the proofs at trial amounting to a constructive amendment of the indictment. There is no constructive amendment, because the evidence of Schneider's pre-conspiracy conduct concerned acts that actually were charged in the indictment, and the jury instructions did not invite the jury to convict the defendant of a crime not charged. The government has not offered evidence that Schneider participated in the conspiracy charged in count seven during the time period alleged in the third superseding indictment, but precedent from other circuits holds that a variance in the dates is not fatal, as long as the government proves the offense occurred before the statute of limitations expired, which it did here. Therefore, the Court will deny the motion for judgment of acquittal on count seven of the superseding indictment.

I.

Count seven of the third superseding indictment charged Schneider with conspiring to defraud Standard Federal Bank: "From December 2005 to September 2009 ... defendants Hussein 'Sam' Nazzal (D–2) and Edward Schneider (D–6) did ... conspire and agree together to commit the crime of bank fraud." Third Superseding Indictment [dkt. # 93] ¶ 73. As to the "means and manner of the conspiracy," the indictment alleged that

76. In May 2004, [Farouk Harajli] met with Nazzal and Schneider because FH was interested in borrowing money from Nazzal. Nazzal loaned FH $100,000.

77. It was part of the conspiracy that Nazzal, Schneider and FH agreed that FH should have a Power of Attorney so that FH could sign [his wife's] name to documents so FH could enter into financial transactions with Nazzal without JH's permission. Schneider prepared the Power of Attorney document. At Nazzal's direction, FH forged JH's name and had the Power of Attorney document notarized.

78. FH entered into two mortgages with Nazzal on October 7, 2004 and January 5, 2005, totaling $750,000. The collateral on these transactions was the 8 Mile gas station that was the collateral for the Standard Federal mortgage. FH signed JH's name, relying on the fraudulent Power of Attorney that Schneider had previously prepared at Nazzal's direction.

*Id.* at ¶¶ 76–78. In its brief, the government concedes that the date range stated in the indictment is incorrect, ascribing it to a drafting error, and that the indictment should have alleged a conspiracy ranging from May 2004 to September 2009.

At trial, Farouk Harajli testified that on May 20, 2004, Schneider prepared a blank power of attorney form for Harajli, and

that Harajli forged his wife's and witnesses' signatures on the form, giving him the purported power to convey mortgages to defendant Nazzal and his companies on jointly owned property. On October 7, 2004, Schneider prepared a mortgage for $350,000 which Harajli conveyed to Nazzal's G & S Development company on certain property referenced at trial as the Eight Mile Road Gas Station property. On January 5, 2005, Schneider prepared a similar mortgage on the same property in the amount of $400,000.

Before borrowing money from Nazzal, Harajli obtained a loan from Standard Federal Bank and gave a mortgage on the same property to the Bank. That mortgage would have had priority, but apparently a Bank employee, asleep at the switch, failed to record the mortgage until several months later. Harajli testified that he told Nazzal about the Standard Federal mortgage, but when Nazzal saw that no one had recorded it, he recorded the G & S mortgages on October 8, 2004 and January 11, 2005, before Standard Federal recorded its prior mortgage on the Eight Mile Road property.

Litigation ensued between Standard Federal Bank and Nazzal's company over the mortgages. Nazzal testified—falsely—that he did not have actual knowledge of the Standard Federal mortgage when he made his loans and received the mortgages from Harajli. Harajli gave depositions in that case where he testified—again, falsely—that Nazzal had no actual knowledge of the prior mortgage.

The government asserts that Harajli testified at trial in this case that Schneider was present at depositions leading up to the 2009 bench trial involving Standard Federal Bank when Harajli testified falsely about power of attorney and mortgage documents that Schneider had prepared. It is true that Harajli testified that

at a deposition, Ed was there and during the break we would go into another room and we would basically talk about, you know, what's going on in the deposition. And he [referring to Hussein Nazzal] would tell—he would talk freely in front of Ed. He never had a problem talking freely in front of Ed.

Trial Tr. Vol. 10 Excerpt, test. of Farouk Harajli at 68. But there is no testimony about when that deposition occurred or the contents of the conversation. And it could not have been Harajli's depositions in the Standard Federal case on December 5, 2007 or February 7, 2008, because Schneider is not identified as being present at those proceedings. Def.'s Reply Br., Ex. A, B. Harajli also testified that he, Nazzal, and Schneider met more than once at Schneider's law office at unspecified times, that Nazzal "spoke freely" in front of Schneider, and that Nazzal behaved in Schneider's law office "as if he owned the place."

The government asserts that Ross Carey testified that he accepted a back-dated check from Nazzal as part of the scheme to defraud Standard Federal Bank, and that check was used to make it appear that G & S Development, Inc., a real estate investment company used by Nazzal and Schneider, had purchased $750,000 in mortgage insurance for the falsely inflated loans they claimed to have made against Harajli's gas station. Carey further testified that he provided false sworn testimony in depositions and at the 2009 bench trial, and Nazzal and G & S Development prevailed in that litigation.

The government asserts that Kristen Dankert testified that her company, Stewart Title Agency, and Standard Federal Bank had to pay $750,000 to G & S Development in September 2009. The government asserts that the cashier's check for this payment was deposited on September

24, 2009, and that testimony and exhibits established that Schneider was identified on state records as the treasurer of G & S Development, Inc. in the years leading up to the receipt of the $750,000 it obtained by fraud from Standard Federal Bank.

## II.

■ When addressing a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), the Court must view the evidence in the light most favorable to the prosecution and determine whether there was sufficient evidence offered at trial to convince a rational trier of fact beyond a reasonable doubt that all of the elements of the charged crimes had been established. *United States v. Graham,* 622 F.3d 445, 448 (6th Cir.2010); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant question in assessing a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir.2007); *see also Jackson,* 443 U.S. at 318, 99 S.Ct. 2781. The evidence need not exclude every theory of innocence. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. The testimony of a single witness is generally sufficient to demonstrate guilt beyond a reasonable doubt. "The prosecution, however, must present substantial evidence as to each element of the offense from which a jury could find the accused guilty beyond a reasonable doubt." *Brown v. Davis,* 752 F.2d 1142, 1145 (6th Cir.1985) (internal citation omitted). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin,* 375 F.2d 956, 957 (6th Cir.1967). But where the evidence is at least as indicative of innocence as guilt, the Court must direct a verdict of acquittal. *United States v. Berger,* 224 F.3d 107, 116 (2d Cir.2000).

■ Count seven of the third superseding indictment charged that Schneider and others conspired to commit bank fraud, contrary to 18 U.S.C. § 1344, "by knowingly executing and attempting to execute a scheme or artifice to obtain money, funds, or other property owned by, or in the custody or control of, federally insured financial institution Standard Federal Bank by means of false and fraudulent pretenses, representations or promises." Third Sup. Indict. at 22. As mentioned earlier, the offense date range is alleged to be "[f]rom December 2005 to September 2009." *Ibid.*

Schneider argues that the jury was permitted to convict him on count seven based on evidence of his conduct that predated the chronological boundaries defined in the indictment, and therefore an impermissible variance occurred between the charge and the proofs, constructively amending the indictment. He relies primarily on *United States v. Ford,* 872 F.2d 1231 (6th Cir. 1989).

■ A constructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which modify essential elements of the offense charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.

*United States v. Siemaszko,* 612 F.3d 450, 469–70 (6th Cir.2010) (internal citations and quotation marks omitted). In *Ford,* the defendant was charged with being a felon in possession of a firearm. The Sixth Circuit held that instructing the jury that it could consider any date within an elev-

en-month time span in regard to a charge that alleged the defendant had possessed a gun "on or about" a date certain was a "constructive amendment of the indictment [that was] prejudicial per se and warrant[ed] reversal." *Ford,* 872 F.2d at 1236–37.

The Court finds no constructive amendment here. The Court instructed the jury that the defendant was charged with "conspiracy to defraud Standard Federal Bank of money or other property some time between December 2005 and September 2009 in violation of federal law." Trial Tr. March 25, 2013 at 14. The Court also told the jury that "the government does not have to prove that the crime happened on that exact date. But the government must prove that the crimes happened reasonably close to that date." *Id.* at 27. The jury was not invited to convict Schneider for acts he committed before the date range charged by the grand jury.

■■■ There is a question, however, whether the government offered evidence to prove the crime actually charged in count seven. There is no dispute here as to the elements of the crime. "A conviction for conspiracy to commit . . . fraud requires proof beyond a reasonable doubt that the defendant knowingly and willfully joined in an agreement with at least one other person to commit an act of . . . fraud and that there was at least one overt act in furtherance of the agreement." *United States v. Cantrell,* 278 F.3d 543, 546 (6th Cir.2001) (citing *United States v. Crossley,* 224 F.3d 847, 856 (6th Cir.2000)). The Sixth Circuit has held that "the temporal scope of a conspiracy is not an 'essential' or 'material' element of the charge." *United States v. Warshak,* 631 F.3d 266, 309 (6th Cir.2010) (quoting *United States v. Henderson,* 179 Fed.Appx. 535, 538 (10th Cir.2006)). However, the evidence of the crime will not be sufficient unless "the

government proved a conspiracy within the relevant chronological bounds." *Ibid.*

In this case, none of the evidence of Schneider's participation in the conspiracy to defraud Standard Federal Bank occurred within the range of dates charged in the indictment. Schneider's actions in preparing the blank power of attorney and drafting the mortgages all took place from May 20, 2004 to January 5, 2005, between eleven and eighteen months before the charged conspiracy began, as charged in the indictment. There is no evidence in this record from which a jury could have inferred reasonably that Schneider's involvement in the Standard Federal fraud carried over beyond December 2005.

None of the acts pointed to by the government suffice, either alone or taken together, to allow a rational trier of fact to find that Schneider participated in the conspiracy after December 2005. First, there is no date reference in Farouk Harajli's testimony that Schneider was present at a deposition in the Standard Federal litigation, and the only documentary evidence of those proceedings does not show his presence. Nor is there any evidence that Schneider engaged in any witness coaching, whenever the deposition may have occurred. As the Court expressly instructed the jury, Schneider's mere presence at Harajli's deposition and during conversations where Nazzal coached Harajli to testify falsely, without more, do not establish that he knew of the goal or the conspiracy, agreed with any of the conspirators to join it, or intended to advance its goals. Second, Schneider's service as treasurer of G & S Development in the years leading up to the receipt of the $750,000 it obtained by fraud from Standard Federal Bank likewise does not suffice to show either that he knew of or intended to advance the goals of any conspiracy to defraud the bank. Third, the government

alludes to the fact that G & S was "used by Nazzal and Schneider," but it does not elaborate on any evidence in the record to illustrate how any "use" of the company showed Schneider's knowledge of or intent to advance the goals of the conspiracy. None of this evidence comprises proof of what the defendant said, what the defendant did, how the defendant acted, or any other circumstances that show what was in the defendant's mind.

Even taken as a whole, those facts show only that Schneider was an officer of a company that received the proceeds of fraud, that he looked on as Nazzal told Harajli to lie under oath, and that later he watched Harajli consummate the plan to lie. None of those facts suffice to show that Schneider knowingly associated himself with the conspiracy in some way as a participant—someone who wanted the crime to be committed—not as a mere spectator.

The government cites *United States v. Benson*, 591 F.3d 491, 497 (6th Cir.2010), for its holding that an act that occurred eleven months prior to the alleged start of a multi-year conspiracy was "reasonably near" to the date stated in the indictment, and that admitting evidence of that act does not effect a constructive amendment of the indictment. In that case, the defendant argued on appeal that evidence of a January 1998 currency seizure worked a constructive amendment of the indictment where the indictment charged a conspiracy that occurred "in or about 1999 to at least May 9, 2002." That case does not govern here, however; it is distinguishable on four points. First, in *Benson* the defendant did not object to the admission of the 1998 currency seizure at trial, so on appeal the claim was reviewed for plain error only. Second, the indictment in *Benson* charged that the conspiracy occurred "in or about" the dates listed; there is no such language in count seven of the third superseding

indictment. Third, the court in *Benson* found that other evidence at trial showed conduct that indisputably occurred within the alleged time frame of the conspiracy, and that evidence was sufficient for a conviction. As noted above, there is no such evidence in this case. Fourth, the currency seizure event also was admissible to show the background of and to provide a complete picture of the conspiracy. Schneider's pre-conspiracy activity likewise was relevant in this case, but without further evidence connecting Schneider to the conspiracy actually charged in the indictment, it is not enough.

Read reasonably, *Benson* stands for the unremarkable rule that it is not plain error to admit evidence of an act that occurred eleven months before the alleged start of a multi-year conspiracy, where that act is relevant to the back story of the conspiracy as a whole, and where the record also contains evidence of acts that occurred entirely within the alleged time frame, which are sufficient on their own to prove that the defendant conspired. Schneider did not object at trial to the admission of evidence that he drafted the blank power of attorney or the mortgages, nor does he do so here. However, that evidence does not establish Schneider's participation in the bank fraud conspiracy during the dates charged.

▆▆▆▆ Of course, there is evidence that Schneider participated in the conspiracy to defraud Standard Federal Bank, but his participation occurred prior to the dates stated in count seven. Consequently, there was a variance between the evidence and the charging document. A variance differs from a constructive amendment, in that " 'a variance occurs when the charging terms are unchanged, but the evidence at a trial proves facts materially different from those alleged in the indictment.' " *United States v. Nix-*

*on,* 694 F.3d 623, 637 (6th Cir.2012) (quoting *United States v. Nance,* 481 F.3d 882, 886 (6th Cir.2007)). A variance that does not rise to the level of a constructive amendment "is not reversible error unless the defendant demonstrates prejudice." *Ibid.* (quoting *Nance,* 481 F.3d at 886). A variance does not become a constructive amendment unless there is "a substantial likelihood that a defendant may have been convicted of an offense other than that charged by the grand jury." *Nance,* 481 F.3d at 886 (internal quotation marks omitted).

As mentioned above, there was no constructive amendment here because the date discrepancy created no danger that Schneider was convicted of an offense not charged by the grand jury. The government charged Schneider with conspiracy to commit bank fraud. The trial evidence was sufficient to prove each essential element of that crime. The question that remains is whether Schneider suffered prejudice from the variance in the dates charged and proved.

This Court has not located a Sixth Circuit case in which the government offered no evidence of criminal conduct within the date range of a conspiracy charged by the grand jury. *United States v. Rashid,* 274 F.3d 407 (6th Cir.2001), comes close. There, the court held that evidence of criminal activity outside the date range in the indictment did not constitute a "fatal variance," but there was other evidence of criminal conduct within the date range as well. *Rashid,* 274 F.3d at 414–15 (stating that the Sixth "Circuit has held that even when evidence is presented of activities that occurred outside of the conspiracy dates charged in the indictment (as opposed to the statute of limitations dates), that did not constitute a fatal variance" (citations omitted)).

Decisions from other circuits are directly on point. The clear majority of them have concluded that unless the date of an offense constitutes a critical part of the offense, "a variance in the dates charged in the indictment and those proved at trial will generally be harmless if the government proves that the offense was committed on any day before the indictment and within the statute of limitations." *United States v. Scheuneman,* 712 F.3d 372, 379 (7th Cir.2013) (internal citations, quotation marks, and alterations omitted); *see also United States v. Wells,* 646 F.3d 1097, 1103–04 (8th Cir.2011) (holding that where "the date of the offense is not an element of the charge ... a variance between the indictment date and the proof at trial is not fatal so long as the acts charged were committed within the statute of limitations period, and prior to the return date of the indictment"); *United States v. Daggs,* 448 Fed.Appx. 504, 508 (5th Cir.2011) (holding that "an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, within reasonable time limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient"); *United States v. Queen,* 159 Fed.Appx. 81, 88 (11th Cir.2005) (noting generally that "a variance between the dates alleged and the dates proved at trial ... will not trigger reversal provided that the date proved falls within the statute of limitations and before the date of the indictment"); *United States v. Whittaker,* 67 Fed.Appx. 697, 702–03 (3d Cir.2003) (addressing a sufficiency of the evidence challenge); *United States v. Hawthorne,* 94 F.3d 118, 121 n. 2 (4th Cir.1996); *United States v. Mktg. Warehouse, Inc.,* 1995 WL 127870, at *4 n. 6 (10th Cir.1995).

In this case, Schneider has not shown any way in which he was prejudiced at trial. For example, he does not suggest how his defense strategy would have changed, if at all, had the indictment alleged the proper start date of 2004. He

was given notice in the indictment of the conduct that formed part of the conspiracy charged in count seven, even though those acts were alleged (accurately) to have occurred outside the dates of the conspiracy as stated (inaccurately) in the indictment. So although there was a gap of eleven months between the dates charged and those proven at trial, the precedents cited above suggest that the proofs were close enough for government work.

### III.

The Court finds no prejudicial variance or constructive amendment as to count seven of the superseding indictment. Although the government did not prove that defendant Edward Schneider participated in the conspiracy during the dates charged by the grand jury, the conviction nonetheless can be sustained by the trial evidence.

Accordingly, it is **ORDERED** that defendant Edward Schneider's motion for judgment of acquittal on count seven of the indictment [dkt. # 174] is **DENIED.**